**In re June BOOKER, Debtor.**

**No. 02–11975.**

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Sept. 16, 2003.

208

Lee R Kravitz, Cleveland, OH, for Debtor.

Donza M. Poole, Cleveland, OH, Gary A. Potts, Keith D. Weiner & Associates, Emily Sweeney, Cleveland, OH, for creditors.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

June Booker (Debtor), objects to the allowance of a claim filed by the Internal Revenue Service (IRS) against her bankruptcy estate. The IRS filed its response opposing the relief sought by the Debtor. Core jurisdiction of this matter is acquired under provisions of 28 U.S.C. § 157(b)(2)(A)and (B), 28 U.S.C. § 1334, and General Order No. 84 of this district. Upon a duly noticed hearing on this contested matter, an examination of the parties' pleadings, and the record, generally, the following factual findings and conclusions of law are herein made:

\* \* \* \* \* \*

The Debtor filed her petition for bankruptcy relief under Chapter 13 on March 1, 2002. She scheduled no liability owed to the IRS. On March 29, 2002, the IRS filed its proof of claim against her estate in the total amount of $51,591.20, where $27,334.38 of that amount is designated as a priority claim.

On April 18, 2002, the IRS filed an objection to the confirmation of the Debtor's proposed Chapter 13 plan, arguing a lack of feasibility under 11 U.S.C. § 1325(a)(6), as the Debtor failed to file certain tax returns and had not provided the IRS with justifiable affidavits explaining why she was not required to file federal income tax returns. The Debtor responded by filing an affidavit dated June 20, 2002, which stated that her sole source of income was derived from her care of foster care children. On October 17, 2002, the Debtor filed an initial objection to the IRS' proof of claim. She withdrew her objection on December 6, 2002, once the IRS responded. The present amended objection to the IRS' claim was filed by the Debtor on May 13, 2003.

The Debtor contends she deliberately did not schedule a debt owing to the IRS "...as she does not believe that she owes income tax." Debtor's Amended Objection, p.1. In support of this contention, she asserts that specific provisions of the U.S. Master Tax Guide at § 883, and certain correspondence from a foster placement service known as North Shore Services, make her income excludable from taxable gross income. Debtor further contends that the claim of the IRS was filed in opposition to the express language of § 131 of the Internal Revenue Code which, purportedly, was enacted to encourage qualified individuals to become foster caregivers. As such, the Debtor contends that she meets the requirements for tax exempt income. She further asserts that her care

recipients were "placed with the agency through government sources with payment for the caregiver [herself] having originated from a government agency." Debtor's Brief, p.1. Consequently, the Debtor asserts that the tax status of the agency from which she is assigned foster children and receives payment does not alter her personal status as a foster "caregiver." Id. Therefore, her gross income is exempt for federal income tax purposes. Thusly, she contends her objection to the IRS claim should be sustained.

The IRS contends that the Debtor's objection should be overruled and that the Debtor should file tax returns for the years 1996 through 2001. The IRS states that it needs Debtor's tax returns for those years in order to accurately assess the Debtor's tax liability. Currently, the proof of claim filed by the IRS reflects priority tax claims in the approximate amount of $27,334.38 and general unsecured claims in the approximate amount of $24,256.82, for federal income tax years 1996 through 2001. The claims were approximated, as the Debtor had not filed income tax returns for those years. The IRS asserts that for the years at issue in this case the Debtor's income from North Shore Services does not meet the requirements of § 131 of the Internal Revenue Code. Based on correspondence from North Shore Services, the IRS asserts that North Shore Services is a for-profit corporation and that, because of this, the payments that the Debtor received are not "qualified foster care payments" under § 131. The IRS maintains that since the Debtor's income did not meet the requirements of § 131 her foster care payments from North Shore Service are part of her taxable gross income.

\* \* \* \* \* \*

The issues for this Court to decide are (1) whether Debtor needs to file income tax returns and (2) whether the payments the Debtor received for her services as a foster care provider are excludable from gross income under § 131 of the Internal Revenue Code.

\* \* \* \* \* \*

The law requires a person to file a federal income tax return in two situations. First, the law requires that a person file a tax return if his or her income equals or exceeds the exemption amount for the applicable tax year. 26 U.S.C. § 6012(a)(1)(A). The exemption amount depends on the taxpayer's status, i.e., single, head of household, and the exemption amount changes from year to year. Second, the law requires a person who is self-employed to file a tax return if his or her net earnings exceed $400 for the taxable year. 26 U.S.C. § 6017.

Essential to the determination of whether Debtor had to file a tax return is the determination of the taxability of the payments Debtor received from North Shore Services as compensation for providing foster care. If the payments are excludable from gross income the Debtor would not have to file income tax returns so long as her income from any other source did not equal the exemption amount or net earnings threshold. The Debtor maintains that the foster care payments received from North Shore Services were her sole source of income during the tax years in question, however, the record reflects the Debtor did work at Papa John's Pizza during 1996. Hearing Transcript, July 24, 2003. If the payments are not excludable, the Debtor will be required to file federal income tax returns in compliance with either 26 U.S.C. § 6012(a)(1)(A) or § 6107.

To determine the taxability of the payments to Debtor, this Court must first look to the language of § 131 of the Internal

Revenue Code. *Consumer Prod. Safety Commn. v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *Herman v. Fabri–Centers of America, Inc.*, 308 F.3d 580, 585 (6th Cir. 2002). From 1996 to 2001, 26 U.S.C. § 131 read in pertinent part as follows:

(a) **General rule.**—Gross income shall not include amounts received by a foster care provider during the taxable year as qualified foster care payments.

(b) **Qualified foster care payment defined.**—For purposes of this section–

(1) **In general.**—The term 'qualified foster care payment' means any amount—

(A) which is paid by a State or political subdivision thereof or by a placement agency which is described in section 501(c)(3) and exempt from tax under section 501(a), and

(B) which is—

(i) paid to the foster care provider for caring for a qualified foster individual in the foster care provider's home, or

(ii) a difficulty of care payment.

The language of § 131(b)(1)(A) is clear in that it requires the "qualified foster care payment" to be paid by the state, a political subdivision, or a tax exempt placement agency. This Court will enforce the language of a statute when that language is plain, clear and unambiguous. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Herein, the record reflects that North Shore Services is a for-profit corporation and that the Debtor has been an independent contractor of North Shore Services since 1990. Hearing Transcript, July 24, 2003.

While the legislative history of § 131 may operate to encourage individuals to become foster care providers, it is also clear from the legislative history that the kinds of payments that the Debtor received from North Shore Services were not to be excluded from gross income until the taxable year of 2002. H.R. Conf. Rep. No. 106–289, at 227–228 (1999)(In explaining the present law the report states that "a foster care provider may exclude qualified foster care payments…from gross income if certain requirements are satisfied. First, such payments must be paid to the foster care providers by either (1) a State or political subdivision of a State; or (2) a tax-exempt placement agency."). The amendment to § 131 that allows payments made by taxable entities, such as North Shore Services, to be excluded from a foster caregiver's gross income did not become effective until December 31, 2001. *Id.* The Debtor's contention that the source of payment had originated with a government agency is without merit, in light of the express language of § 131(b)(1)(A) and the legislative history. It is clear from the record that North Shore Services, a for-profit corporation, paid the Debtor and not the State, a political subdivision, or a tax-exempt placement agency.

For these reasons, this Court finds that the amounts received by the Debtor from North Shore Services for foster care services were not "qualified foster care payments" under § 131(b) and are includable in Debtor's gross income for each of the years at issue in this case. To the extent Debtor's gross income equals or exceeds the exemption amount for each of the taxable years at issue or to the extent her net earnings from self-employment exceed $400, the Debtor will be required to file federal income tax returns.

\*    \*    \*    \*    \*    \*

■ The IRS' filing of a proof of claim in accordance with the Bankruptcy Rules constituted prima facie evidence of the validity of the claim. Fed.R.Bankr.P 3001(f).

The Debtor, as the objecting party, must then submit evidence that puts the validity of the IRS' claim at issue. The Debtor has failed to do so in this case.

\*    \*    \*    \*    \*    \*

Accordingly, the Debtor's objection is overruled and the claim of the IRS is allowed. The Debtor is to file the required income tax returns forthwith in compliance with the Internal Revenue Code for the years 1996 to 2001 so that tax liability can be assessed and a determination of a feasible plan can be made. Each party is to bear its respective costs.

**IT IS SO ORDERED.**

### *JUDGMENT*

At Cleveland, in said District, on this 16th day of September, 2003.

A Memorandum Of Opinion And Order having been rendered by the Court in this matter,

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the Debtor's Amended Objection to the Allowance of Claim No. 35 of the Internal Revenue Service is hereby overruled. Each party is to bear its respective costs.

**IT IS SO ORDERED.**